## JOEL F. JOHNSON v. EUGENE E. SUTTON.

### [49 South. 970.]

1. BROKERS. *Commissions. When not earned.*

Where the contract between the broker and his principal specifies the terms on which land is to be sold, the broker performs his duty and is entitled to his commissions when he produces a purchaser ready, willing, and able to buy on the specified terms; but where the terms are not specified, and the actual sale is to be made by the principal, the duty is not performed until he produces a purchaser to whom the principal sells.

2. SAME. *Case.*

Where a broker, employed to procure a purchaser of timber land, up to fifty thousand acres, for a specified commission, payable out of the purchase money, secured a purchaser willing to purchase forty thousand acres on condition that the portion of the tract which had not been inspected should be of a certain quality, and the purchaser refused to take the land, on the ground that a part of it was not of the standard called for, and the owner and the purchaser canceled the contract of sale, the broker was not entitled to commissions.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

Sutton, appellee, was complainant and cross-defendant in the court below; and Johnson, appellant, was defendant and cross-complainant there. From a decree in favor of Sutton, Johnson appealed to the supreme court.

The opinion of the court states the facts.

*W. R. Harper,* for appellant.

The agreement between Sutton and Johnson was clearly unilateral and hence not binding upon either until performance by the other.

Under the terms of the contract between Johnson and Sutton

it was necessary for a sale to be made of those particular lands described in the contract, to wit: "certain timber lands lying along Pearl river in the counties of Rankin, Madison, Hinds, Scott and Leake and in the state of Mississippi." Manifestly the contract referred to those lands which Sutton and Johnson had together ridden over and examined. Moreover, the contract stipulates that such amount as Sutton should be entitled to under the contract was "to be paid out of the purchase money as soon as any land is sold to such purchaser." This contract of Johnson with Sutton provided for a sale, not for an agreement of sale; and Sutton's part of the money was to be paid to him by Johnson out of the fruits of the completed transaction. Johnson did not contract with Sutton that the lands should be of any particular character or quality; but he simply agreed that the lands thus to be sold in the counties mentioned, should be sold to Sutton's customer.

Did Sutton bring a customer who bought the lands and paid for them? Did he bring a customer who absolutely agreed to buy them? Certainly not. He instead found a purchaser who agreed to purchase such lands only on condition that they came up to a certain standard. It is true that Johnson guaranteed that the lands would come up to such standard but this guaranty was made not to Sutton but to Foley & Lawson in order to get them to advance the $250,000 and execute their written agreement with him to purchase. The guaranty upon Johnson's part was given gratuitously in so far as Sutton was concerned. It was true that Johnson, when he guaranteed these lands, thought that they would come up to the standard, but in this he was only guessing. He was not an expert in timber matters.

This is not a case where Sutton found and produced a customer willing and able to buy the lands in question, and to whom Johnson arbitrarily refused to sell. On the contrary Johnson was eager and anxious to sell these lands to Foley & Larson. Under the circumstances Johnson cannot be held liable to

Sutton. *Bull v. Price,* 20 English Common Law, 115; *Olsen v. Jodon,* 38 Minn. 467, 38 N. W. 485; *Hinds v. Henry,* 36 N. J. Law, 332; *Owen v. Ramsey,* 23 Ind. App. 288, 55 N. E. 247; *Tombs v. Alexander,* 101 Mass. 256, 3 Am. Rep. 349; *Dorrington v. Powell,* 52 Neb. 443, 72 N. W. 587.

The reason that Sutton is entitled to nothing under his contract, is that no sale was ever made "to any purchaser brought by him, either directly or indirectly." *McPhail v. Buell,* 87 Cal. 116, 25 Pac. 266; *Cremer v. Miller,* 56 Minn. 53, 57 N. W. 318. We concede that the weight of authority is to the effect that, where there is no special contract, a real estate broker is entitled to his commission when he has produced a purchaser ready, willing and able to make a purchase. But even in such case there is a considerable and respectable line of authority that a consummated sale is necessary before the broker is entitled to his commission, or it must be shown that the seller arbitrarily refuses to make the sale. All the courts, however, unite in holding that where a special contract is shown with the broker it must be looked to entirely to determine whether it was the intent of the parties that a complete and consummated sale should be a condition precedent to the right of the broker to his commissions. *Tombs v. Alexander,* 101 Mass. 256; *Holbrook v. Investment Co.,* 30 Or. 265, 47 Pac. 920; *Condict v. Cowdrey,* 139 N. Y. 280, 34 N. E. 781; *Olsen v. Jodon,* 38 Minn. 467; *Hinds v. Henry,* 36 N. J. 332; *Dorrington v. Powell,* 52 Neb. 443.

*J. B. Harris,* on the same side.

The language of the contract between Johnson and Sutton shows clearly that the parties contemplated an actual sale of land before the appellee would be entitled to any compensation. The sum of fifty cents per acre was to be paid "for each and every acre which shall be sold to any purchaser brought by second party;" and was "to be paid out of the purchase money," and "as soon as any land is sold to such purchaser."

Now, we are not insisting that a case might not arise under the terms of this contract between appellant and appellee in which appellee would be entitled to the fifty cents per acre, although no sale should be made. For instance, if the appellee had produced a party ready and willing to buy, and the appellant being able to perform his part of the contract, should capriciously fail to convey the land or consummate the sale, it might be that the appellee could recover fifty cents per acre for the number of acres which the appellant was able to convey and which the purchaser was able and willing to take, but which the appellant refused to convey. But we have no such case here. This was not the ordinary contract of a real estate broker to produce a purchaser, but the scheme was a joint operation between Sutton and Johnson, by which they were endeavoring to make what may be called a "timber deal." Johnson, on his part, was to get the land, and Sutton to get parties who might buy. Johnson was not the *owner of the land,* nor is it shown that he was offering, for himself, to sell any specific quantity of land.

The correspondence between Sutton and Johnson, which was offered in evidence, shows that Sutton was not acting as an ordinary real estate broker, but was acting conjointly with Johnson, who was himself a *quasi*-broker, in an endeavor to sell lands to Foley & Larson, Sutton himself being fully aware of the whole situation, and had personally inspected the lands. Appellant and appellee were to co-operate in the endeavor to get control of forty thousand acres of land for the purpose of selling the same to Foley & Larson. If the sale should go through, appellant and appellee were to share in the proceeds, Sutton's share to be fifty cents per acre for such lands as were sold, to be paid out of the purchase money.

Sutton did not produce a purchaser ready and able to buy the lands which Johnson acquired and tendered. The prospective purchasers, Foley & Larson, declined to take the lands on the ground that they did not come up to the standard and their

final refusal to take the lands left Johnson for a time in a very precarious condition financially. The court will note that the lands were finally sold to a third party, Herrick, with whose procurement Sutton had nothing whatever to do.

The principles of law applicable to real estate brokers are fully discussed in the elaborate notes to the cases of *Hoadley v. Savings Bank,* 44 L. R. A. 322 and *Lunney v. Healey,* 44 L. R. A. 593. See also *Dorrington v. Powell,* 52 Neb. 440, 44 L. R. A. 611; *Fultz v. Wimer,* 34 Kan. 576; *Hinds v. Henry,* 36 N. J. L. 328.

*Powell & Powell,* on the same side.

There are two questions in this case. First. Did Sutton's contract with Johnson only require him to introduce Johnson to a law suit, or did it require him to furnish a buyer who would actually buy? Second. Was there ever a completed sale between Johnson and Foley & Larson for these lands?

Johnson desired to sell his lands for cash only. In fact he could not sell in any other way as he was compelled to get money from Foley & Larson to buy a good part of the lands. Sutton himself understood that the lands were to be actually sold and the money paid, because he agreed in his contract with Johnson that he should be paid out of the proceeds of the sale. It is evident that Sutton and Johnson both understood that Sutton should bring, not a prospective purchaser for the lands who would buy on certain contingencies, but a purchaser who would unconditionally buy the lands.

The sale of property is not complete between seller and buyer, so as to pass title, while anything remains to be done between them in relation to the property, whether it be identification of the property or fixing the price. *Williams v. Sayers,* 79 Miss. 50, 29 South. 995; Story on Sales (3rd ed.), § 296. The price must be fixed without the necessity of further negotiations between the parties. 21 Am. & Eng. Ency. of Law (1st. ed.), 466.

Where any act remains to be done by the vendor in order to

ascertain value, quantity or quality the sale is not complete. *Baldwin v. McKay,* 41 Miss. 358. It was the agreement between the prospective purchasers and Johnson that before there should be a sale the amount of timber on the lands should be estimated and determined by comparison with a certain tract of well-known timbered land belonging to the wife of appellant, and if all of the lands should prove satisfactory, by such comparison the sale would be made. Right here the parties disagreed and never got together; their minds never met and hence no sale was ever made.

Sutton was to make a sale and not merely leave Johnson in the midst of a law suit with Foley & Larson. And accordingly the $10,000 which Johnson paid to Sutton, one-half of the commission claimed, should be returned by Sutton. 1 Mecham on Sales, § 499, Story on Sales, §§ 231-232.

*Alexander & Alexander,* for appellee.

The contract between appellant and appellee was not unilateral. Both appellant and appellee agreed to certain obligations. Sutton was to use his best efforts to secure a purchaser for the lands before offering such purchaser any other lands. Furthermore the contract was signed by both parties; and, inasmuch as its performance was actually entered upon, it is too late now to contend that it was unilateral.

It was only Johnson's failure, and not his inability, to produce the requisite timber lands after agreeing so to do with Sutton and then with the purchaser produced by Sutton, which resulted in Foley & Larson's not finally closing matters with Johnson. While Johnson procured several thousands of acres of land in the counties mentioned in the contract, he did not exhaust his efforts; and if he had used enough diligence, he could within ninety days' time have acquired sufficient good timber lands to meet the contract required, out of the rich virgin country within the enumerated counties. He has failed to show that it was beyond his ability to acquire the requisite acreage of good timber land. That he may have gotten together forty

thousand acres of land is not sufficient; it was necessary for him to get together forty thousand acres of good timber lands, and his failure as to this resulted from his own neglect. It is not contended by learned counsel for appellant that Foley & Larson even up to August, 1905, were at any time unwilling or unable to purchase and pay for the forty thousand acres of good timber lands if Johnson had only gotten and tendered the lands to them.

That appellant and appellee could legally contract in regard to lands in the counties mentioned, that is, within a definite limit, which lands were yet to be purchased by Johnson, will, we think, hardly be questioned. *Rutland v. Brister,* 53 Miss. 686; *Dotson v. Milliken,* 209 U. S. 237, 53 L. Ed. 768.

The contention that the appellee, Sutton, will be entitled to no recovery from appellant until proof shown that Johnson had actually received the purchase money, is without reason. It would preclude justice from being done, if, after a broker has done all that he can do, and a failure of sale occurs solely through the caprice or negligence or delay or fault of his principal, the principal should be allowed to say that inasmuch as he had not received the purchase money the broker could have no claim whatever upon him for compensation. *Hugill v. Weekley,* 15 L. R. A. (N. S.) 1262; *Kock v. Emmerling,* 22 How. (U. S.) 72; *Timberman v. Craddock,* 70 Mo. 638; *Dolan v. Scanlan,* 57 Cal. 266; *Fox v. Rouse,* 47 Mich. 558; Cent. Digest, vol. 8, p. 1210; *Lunney v. Healey,* 44 L. R. A. 493; *Hoadley v. Bank,* 44 L. R. A. 321; *Delta, etc., Co. v. Wallace,* 83 Miss. 665.

Even if the contract between appellant and appellee referred to certain lands already acquired by appellant at the time the contract between appellant and appellee was made, appellant should still be held liable to appellee, for the reason that there is no proof that the lands in question were deficient in quality. The evidence distinctly shows that appellant, in a former suit in chancery instituted by him against Foley & Larson which is made exhibit to this pending cause, distinctly swore that the

land did comply with Johnson's written contract with Foley & Larson. Furthermore Foley and Larson would never have paid over to Johnson a quarter of a million dollars, as they did, if the land had not been of proper quality. The decision by the chancellor on the facts was in favor of appellee and this court should so construe it. There was no necessity for Johnson to repay Foley & Larson the $250,000 on Foley & Larson's complaint that the lands which he delivered to them were not up to the guaranteed standard. If any of the lands were not up to the standard it was merely requisite upon Johnson to go out into the rich virgin territory along Pearl river and buy, in the counties enumerated, sufficient lands of the requisite quality to complete the amount of acreage necessary. It was not Sutton's fault if the lands were not up to quality, and accordingly the court below properly decreed in favor of appellee. *Roberts v. Kimmons,* 65 Miss. 332; *Cheatham v. Yarbrough,* 90 Tenn. 77.

The duty of a real estate broker is discharged when he has found a party who will be acceptable to the owner and who enters into a contract of purchase with the owner. 4 Am. & Eng. Ency. of Law (2d ed.), 976; *Delta, etc., Co. v. Wallace,* 83 Miss. 665.

Appellee's contract with Johnson entitled him to a commission for every acre which should be sold to any purchaser brought by appellee, "either directly or otherwise." Although appellant allowed Foley & Larson to rescind the sale to them, it is shown that Johnson subsequently sold the same lands to one Herrick. If it had not been for appellee and for the prospective purchasers produced by him, and the payment to appellant of the $250,000 which appellant used in acquiring the lands which he subsequently sold, appellant would not have been in position to have made a subsequent sale to Herrick. In the unreported cases of *Weathersby v. Watts.* and *Weathersby v. Rhodes,* decided by CALHOUN, J., at the recent term of this court, this court affirmed a recovery of commissions by a real

estate agent where the sale was made to a purchaser introduced to the owner by a person to whom the broker had shown the land, and in such decision the court approved instructions announcing that if the broker started the "chain of circumstances" that culminated in a sale, he should recover.

*Chalmers Alexander,* on the same side.

When a broker brings the parties together and the price and terms are agreed upon between them, and the contract is signed, he does all that he is compelled to do to entitle him to recover his commissions as the procuring cause of the sale.

The weight of authority supports the rule that if the broker is employed to find or procure a purchaser, and he secures one who is able, ready, and willing to purchase upon the terms named by the principal, and who is accepted by the principal, he has, in the absence of an express agreement to the contrary, performed his contract, even though the terms and conditions of sale as given by the principal to the broker are modified or varied by the principal in his negotiations with such purchaser —especially when the negotiations continue without interruption.

The following authorities fully support the above rules upon the ground that the broker is in such a case the moving cause of the sale as he has brought the parties together and thereby procured a purchaser and performed his contract which was contingent upon his success. *Schlegal v. Allerton,* 65 Conn. 260; *Knowles v. Harvey,* 10 Colo. App. 9; *Bryant v. Abert,* 3 App. D. C. 180, 186; *Dooman v. Ives,* 73 Ga. 295, 301; *McConaughty v. Mahannah,* 28 Ill. App. 169; *Lawrence v. Atwood,* 1 Ill. App. 217, 223; *Rees v. Spruance,* 55 Ill. 308, 310; *Mears v. Stone,* 44 Ill. App. 444, 447; *Clark v. Messler,* 50 Ill. App. 652; *Hafner v. Herron,* 165 Ill. App. 242, affirming 60 Ill. App. 592.

If the broker produces a *bona-fide* purchaser,—that is, a purchaser who is able, ready, and willing to purchase and to per-

form the contract upon his principal's terms, or upon modified terms accepted by the principal,—he is entitled to his commissions without reference to the consummation of the sale, unless the failure to consummate it, where the title is good, is chargeable to such purchaser and not to the fault, refusal, or defective title of the principal. *Smith v. Schiele,* 93 Cal. 144; *Middleton v. Findley,* 25 Cal. 81; *Block v. Shannon,* 29 Cal. 395; *Phelan v. Gardner,* 43 Cal. 311; *Neilson v. Lee,* 60 Cal. 565; *Phelps v. Prusch,* 83 Cal. 628; *Vinton v. Baldwin,* 88 Ind. 104, 45 Am. Rep. 447; *Blodgett v. Sioux City & St. P. R. Co.,* 63 Iowa, 606; *Ford v. Easley,* 88 Iowa, 603; *Brown v. Wilson,* 98 Iowa, 316.

If the broker produces a man of means and abundantly able pecuniarily to carry out the contract, and who evidences his readiness and willingness to do so by executing the same, and paying the earnest money, the fact that the contract is never carried out for reasons arising between the parties to it, for which the broker is not responsible, cannot, so far as the merits of the law of the case are concerned, bar his right to commissions. *Yoder v. Randell,* 3 L. R. A. (N. S.), 576; *Dotson v. Milliken,* 27 App. D. C. 500.

Argued orally by *J. B. Harris* and *W. R. Harper,* for appellant, and by *Chalmers Alexander* and *C. H. Alexander,* for appellee.

SMITH, J., delivered the opinion of the court.

On March 15, 1905, appellant and appellee entered into the following contract: "Madison, Miss., March 15, 1905. This agreement, made and entered into this day, by and between Joel F. Johnson, of Madison, Miss., as first party, and E. E. Sutton, of St. Paul, Minn., as second party: The said parties herein named having in contemplation the sale of certain timbered lands lying along the Pearl river, owned by first party and others, being in the counties of Rankin, Hinds, Scott, Madison, and Leake, and the state of Mississippi, it is agreed between the

parties hereto that first party shall pay to second party or his authorized agent fifty cents per acre for each and every acre which shall be sold to any purchaser brought by second party, either directly or otherwise, up to fifty thousand acres, said amount to be paid out of the purchase money as soon as any land is sold to such purchaser. It is further agreed that said lands up to fifty thousand acres shall be secured by first party and shall be handled by and through him and delivered to said purchaser. It is further agreed that in any other deals hereafter, which first party may secure, that he will co-operate with second party in the sale of the same, giving second party first right or chance to secure buyer for any such tract of land so secured, before offering it to others; and the second party here agrees to use his best efforts to secure a purchaser for said lands so secured by first party before offering said purchaser any other lands. Witness our hands to two (2) copies of this agreement.

"Joel F. Johnson, First Party.<br>"E. E. Sutton, Second Party."

Pursuant to this contract, appellee induced Timothy Foley and Peter Larson, composing the firm of Foley & Larson, to enter into negotiations with appellant with a view of purchasing timber lands, which resulted in the execution of a contract by which Foley & Larson agreed to purchase from appellant forty thousand acres of timber land at an agreed price per acre, which contract, among other things, provided: "That in consideration of one hundred thousand dollars to him in hand paid by the parties of the second part as earnest money, the party of the first part agrees to deliver to the parties of the second part, by proper deed with covenant of warranty, forty thousand acres of timber lands, at ten dollars and fifty cents per acre, except six hundred and forty-four acres known as the 'Yeagley tract,' in Rankin county, Mississippi, of which the purchase price will be seventeen dollars and fifty cents per acre and thirteen hundred and twenty-six acres, being the Powell and Foote tract of land, for which tract the purchase price will be fifteen dollars per acre.

It is agreed that the timber lands to be sold, conveyed, and de-
livered are the same lands looked over and inspected by Thomas
Foley, Eugene E. Sutton, and Joel F. Johnson, and such other
lands as he may own or acquire along the Pearl river, that shall
average for timber to a standard equal to the five thousand one
hundred and twenty-three acres owned by Joel F. Fohnson and
wife, adjoining the homestead, but situated in Rankin county.
All of said lands that have not been examined and approved shall
be subject to the examination and approval of the parties of the
second part or their agents."

Appellant thereupon proceeded to acquire timber land suffi-
cient in quantity to aggregate, when added to the amount al-
ready owned by him, forty thousand acres, and tendered same
to Foley & Larson, who declined to accept it on the ground that
it, or part of it, was not land of the standard required by the
contract. After vainly endeavoring to induce Foley & Larson
to accept and pay for the land, appellant instituted suit against
them in the chancery court, praying for a specific performance of
the contract. Prior to the rejection of the land by Foley & Lar-
son, they had advanced appellant $250,000 under this contract,
and appellant had paid appellee the sum of $10,000, one-half of
the commission to which he was entitled on the sale of forty
thousand acres of land. While the suit for specific performance
was pending, appellant, having then an opportunity of disposing
of the land to another party and owing debts contracted in the
purchase of the land which were then due, entered into an agree-
ment with Foley & Larson by which each released the other from
any liability growing out of their said contract; appellant re-
funding to Foley & Larson the $250,000 advanced him and pay-
ing them in addition thereto the sum of $50,000 to cover the ex-
pense claimed by Foley & Larson to have been incurred by them
in consequence of said contract. The suit for specific perform-
ance was then dismissed, and the land sold to another party,
with whom appellee had no connection.

Appellee then demanded of appellant the payment of the sum

·of $11,288, balance claimed by him as commission on the sale of forty-two thousand five hundred seventy-seven acres of land, which he claimed appellee could and ought to have made to Foley & Larson. Payment was refused, and this suit was instituted in the court below by appellee to recover said amount. Whereupon appellant filed an answer, denying that appellee was entitled to the relief prayed for, and made his answer a cross-bill, praying that appellee be decreed to refund the $10,000 he advanced him. From a decree dismissing the bill, and directing appellant to pay appellee $9,911.50 and interest thereon, this appeal is taken.

The contention of appellee is that when he brought Foley & Larson and appellant together, and the contract between them was executed, he had done all that he was required to do under his contract, and was, therefore, entitled to his commissions. Where the contract between the broker and his principal specifies the terms upon which the land is to be sold, the broker has performed his duty and is entitled to his commissions when he produces a purchaser ready and willing and able to buy upon the terms specified; but where the terms are not specified, and the actual sale is to be made by the principal, as in the case at bar, his duty is not performed until he produces a purchaser to whom the principal sells. Under appellee's contract it was his duty to produce a purchaser who would buy timbered land, the actual sale to be made by the appellee. He did produce a purchaser who was ready, willing and able to purchase forty thousand acres of timbered land, but on condition that that portion of it which had not been inspected should be of a certain quality. Appellant was under no obligation to furnish land of this quality, and his agreeing with Foley & Larson to do so imposed on him no obligation to do so, so far as appellee was concerned.

It follows, therefore, that the contract with Foley & Larson was not a contract for the sale of land such as was contemplated by the contract between appellant and appellee, and as the sale was never, in fact, consummated, appellee never became entitled

to his commissions.    Appellee cannot complain because appellant did not comply with his agreement with Foley & Larson to furnish lands of a certain quality, or, if he did so comply, because he did not hold Foley & Larson to their contract; for without this agreement the contract with Foley & Larson would never have been made, and as he (appellant) was under no obligation to appellee to make this agreement, he was under no obligation to him to comply with it, or to hold Foley & Larson to a compliance with their contract, even if he could have done so, as to which we express no opinion.    All the authorities bearing on every phase of this question will be found set out in the briefs of counsel on both sides, to which reference is here made.

The decree of the court below is reversed, the bill dismissed, and decree here on cross-bill directing appellee to refund to appellant the $10,000 paid him under the contract of March 15th.

*Reversed, etc.*