## FEDERAL ROYALTY CO. v. KNOX et al.
### No. 9467.

Circuit Court of Appeals, Fifth Circuit.

Aug. 9, 1940.

C. C. Moody and Jefferson Davis, both of Indianola, Miss., for appellant.

W. E. Morse, of Jackson, Miss., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellees, Rush H. Knox and George B. Hightower, hereafter called plaintiffs, brought this suit against Federal Royalty Company, an Arizona corporation, hereafter referred to as Federal, to recover compensation for services rendered, relying upon a written contract, the terms of which were as follows:

"Jackson, Mississippi, February 16, 1939.
   "In Re: Mississippi Coast Lease.
"Mr. Rush H. Knox,
"Mr. George B. Hightower,
"Jackson, Mississippi.
"Gentlemen:
   "As per our verbal agreement I am not giving you the same in writing. When the transaction is completed you gentlemen are to receive $5,000.00 cash each, $25,000.00 each as oil payment and 1/96 override royalty to be made jointly to Rush H. Knox and Mrs. George B. Hightower. This

money shall be paid in cash and the oil payment and override royalty shall be transferred to you when the Federal Royalty Company makes its assignment.
"Yours truly,
"Federal Royalty Company,
By F. F. Nigh."

The overriding royalty referred to in the contract was estimated by plaintiffs to be worth over $133,000. The case was tried by the judge without the intervention of the jury. After the evidence was all in, plaintiffs were permitted to file an amended complaint seeking a recovery on a quantum meruit. By stipulation this issue was submitted on the same evidence. The court made extensive findings of facts and conclusions of law. He rejected the claim based on the contract but entered judgment in favor of plaintiffs for $15,000 on a quantum meruit.

The material facts appearing from the record may be somewhat briefly stated. Federal was in the business of buying mineral leases and royalties and selling them for profit. F. F. Nigh was a broker dealing with Federal under a general, standing contract, by which he was obligated to give it preference to purchase any leases, royalties, etc., secured by him, Federal to pay him a commission of ten per cent for purchases made through him or on information furnished by him but he was to receive no commission on any trade not actually made. Early in 1937, Nigh represented to Federal that a lease could be secured on submerged lands on the Gulf Coast in the State of Mississippi, which lease would be taken over by the Gulf Refining Co. and Nigh agreed to divide the profits on the sale of the lease with Federal if he was advanced his expenses for negotiating the trade. The leasing of the state land was under the jurisdiction of the Mississippi Mineral Lease Commission, of which the governor and the attorney general were members.

Nigh went to Jackson, the capital, in February, 1937, and secured the aid of plaintiffs to assist him in inducing the Mississippi Commission to offer the submerged lands for lease. The area was estimated to include from 700,000 to 800,000 acres. The United States also claimed ownership of the lands. Plaintiffs were both attorneys at law. Knox had been attorney general of Mississippi and was then a member of the state senate. A proposition to lease the lands was drafted and submitted on behalf of Federal. It was signed by Nigh as representing Federal but he was without authority to do so. It was accepted but the officers of Federal did not know anything about it until later when they obtained information of its acceptance through a publication in a newspaper in Houston. I. S. Handy, general counsel and vice-president of Federal, immediately went to Jackson, interviewed plaintiffs and advised them of Nigh's want of authority. Opposition to the leasing of the lands, from fishing interests on the Gulf Coast, arose. All the bids, including Federal's were rejected. It appeared Gulf Refining Co. was not interested but Nigh thought Ernest Cottrell would take over the lease if it was obtained. Handy continued to consult with plaintiffs and Nigh and a new proposition was drafted. After that there were extended negotiations with the Mississippi Commission and extensive investigations were made as to the probability of oil development injuring the fishing industry. Handy and Lee Hager, president of Federal, participated in these negotiations. It appeared that neither was Cottrell interested but that Phillips Petroleum Company would consider taking the lease. However, no lease was ever made to anyone. Geophysical tests were made of the land but the record does not show that there was ever any development of the land by drilling wells or that oil or other minerals were ever discovered in the area.

Some two years after Nigh first got in touch with plaintiffs the verbal agreements he had made were put in writing and is the contract declared upon. After that plaintiffs prepared a contract in the form of a letter, dated March 6, 1939, addressed to themselves, to be signed by Federal, through Handy. This letter was as follows:

"The Federal Royalty Company has made an agreement with the Phillips Petroleum Company for the transfer of lease by the terms of which it is to be paid $30,000.00 and a one-forty-eighth of $7/8$ overriding royalty on oil produced, to become effective after the payment of $100,000.00 to the State of Mississippi for each producing structure has been made. If, as and when this payment and conveyance of overriding have been received by the Federal Royalty Company, it will pay to each of you the sum of $5000 and convey to you jointly, or to your nominees, one-half interest in the said overriding royalty.

"This agreement is in lieu of and supersedes any and all agreements heretofore made concerning the matter herein referred to."

Handy made some corrections in the letter but declined to sign it until the transaction with Phillips Petroleum Co. was completed. That event never occurred and the letter was never signed.

 The District Court held that Nigh had no authority to execute an express contract with Federal but that Federal had held Nigh out as its agent. He was right in holding that Nigh was without authority to execute the express contract but the record does not support the conclusion that Nigh was held out to plaintiffs as the agent of Federal with authority to contract for their services. It is plain that plaintiffs were not at all deceived by the acts of the officers of Federal and there was no basis for their assuming that Nigh had any such authority. However, we think the dealings between the officers of Federal and plaintiffs and the general activities jointly engaged in created an implied contract to pay plaintiffs for their services but not at all events. Under the contract executed by Nigh payment was to be made "when the Federal Royalty Company makes its assignment." Under the contract proposed by plaintiffs payment was to be "If, as and when" Phillips Petroleum Co. paid Federal $30,000 and conveyed the overriding royalty. It is plain that payment was to be made to plaintiffs only on condition that a lease should be obtained by Federal and transferred to a person or corporation capable and willing to drill wells and develop the lease, without which there would be no royalties for anyone. The contingent remuneration expected was large enough to induce plaintiffs to render their services purely in the hope of receiving it and as lawyers they must have known that payment was contingent on success. As no lease was ever made plaintiffs can not recover on the implied contract. Johnson v. Sutton, 94 Miss. 544, 49 So. 970; Lee v. Greenwood Agency Co., 123 Miss. 823, 86 So. 449; Russell v. Johnson, 126 Miss. 896, 89 So. 773.

It is the general rule that a person may not abandon a contract and recover on a quantum meruit. Greenwood Lumber Co. v. Lanham, 129 Miss. 40, 91 So. 703; Yandell v. Madison County, 81 Miss. 288, 32 So. 918; Eureka Mfg. Co. v. Wimberly,

113 Miss. 90, 73 So. 871; Carpenter v. Josey Oil Co., 8 Cir., 26 F.2d 442.

It is also the rule that recovery on a quantum meruit depends upon unjust enrichment of the defendant. Here the defendant was not enriched at all. See Williston on Contracts, Rev.Ed., vol. 5, § 1479; Carpenter v. Josey Oil Co., supra.

The judgment is reversed and the case remanded.