SWAIN v. PITTS ET AL.

[82 South. 305, Division B, No 20840.]

BROKERS. *Right to commissions. Procuring purchaser.*

Brokers who were authorized to sell property at a certain price and promised a certain amount as compensation if they procured a purchaser, are not entitled to a commission, though the one with whom they had negotiations which ended in failure, after abandoning the idea of buying on any terms made through the brokers, was induced by a friend and the owner to buy the property at a reduced price.

APPEAL from the circuit court of Washington county. HON. H. H. ELMORE, Judge.

Suit by W. T. Pitts and another against W. B. Swain. From a judgment for plaintiffs, defendants appeals.

The facts are fully stated in the opinion of the court.

*Ben F. Wasson* and *Walton Shields,* for appellant.

It seems to us that the trial of this case proceeded upon the erroneous theory that when a broker procures a purchaser, ready, able and willing to buy, he then becomes entitled to his commission. The law is that when a broker procures a purchaser who is ready, able and willing to buy upon the terms prescribed by the prinicipal, he then becomes entitled to his commission.

There is a vast difference between procuring a purchaser ready, able and willing to buy, and one ready, able and willing to buy on the terms prescribed. The terms prescribed in the letter of October 27th, and which are the only terms Pitts claims were made by Swain, were that if plaintiffs sold the property, or sent Swain a purchaser to whom he might sell of two hundred and sixty-five thousand dollars Swain would pay plaintiffs a commission of five thousand dollars. That plaintiffs were unable to sell Neely at two hundred and sixty-five thousand dollars and that Swain was unable to sell him at two hundred and sixty-five thousand dollars was clearly proven by the testimony of Pitts, Swain and Neely. Swain had given plaintiffs all the time they could ask in order that they might sell at two hundred and sixty-five thousand dollars and the best offer they were ever able to obtain from Neely for the property was two hundred and fifty thousand dollars and that offer was made about the 10th of January, two months before Swain and Neely made a contract.

Upon examination of the authorities holding that the broker had right of recovery when he furnished a purchaser ready, able and willing to buy upon the terms prescribed, the facts will disclose that either the owner dealt directly with the purchaser for the purpose of avoiding payments of the commission, or that such dealings were without the broker's consent, and, in fact, operated to deprive him of his commission.

In *Crook* v. *Forst*, 22 So. (Ala.) 540, it is said: "That an owner who has a fixed net value upon his property has the power to dispose of it at such price if the broker cannot effect the sale so that the owner may realize such net value, but fair dealings between the parties would demand of the owner that he disclose his intentions to the broker before concluding the sale to the purchaser procured by the broker." Swain testified that he had telephoned Mr. Weeks several weeks before he traded with Neely that the plaintiffs needn't try further to sell the property.

In *Chiles* v. *Ptomey*, 43 Pac. (Mont.) 714, it was held that where the complaint alleged that the broker was to find a purchaser for the property for the stipulated price and the evidence showed that it was sold by the owner to the broker's customer for a greatly reduced price, the broker to be entitled to a commission must show that such customer was ready, able and willing to pay the stipulated price, or present an excuse for not doing so. In the case at bar, the only excuse offered by the plaintiffs for not selling to Neely at the stipulated price was that he would not pay it and refused to pay it, and this excuse was certainly not an excuse which would give them a right of recovery in this case. See, also, *Noyes* v. *Caldwell*, 104 N. E. 495.

The above cases are cited in the notes to *Ball* v. *Dolan*, (S. D.) 15 L. R. A. (N. S.) 272, et seq. That case presents facts almost identical with the case at bar. The case of *Wiggins* v. *Wilson*, 45 So. (Fla.) 1011, is directly in point, both as to the pleading and the law and states numerous authorities, all of which fully support the case. *Waterman* v. *Boltinghouse*, 82 Cal. 659, 23 Pac. 195; *Cathcart* v. *Bacon*, 47 Minn. 34, 49 N. W. 331; *Blodget* v. *Sioux City & St. P. Ry. Co.*, 63 Iowa, 606, 19 N. W. 799; *McGavock* v. *Woodlief*, 20 How. (U. S.) 221, 15 L. Ed. 884; *Wylie* v. *Marine Nat. Bank*, 61 N. Y. 415; *Babcock* v. *Merritt*, 1 Colo. App. 84, 27 Pac. 882; *Stephens*

v. *Scott,* 43 Kans. 285, 23 Pac. 444; *Henderson* v. *Vincent,* 84 Ala. 99, 4 So. 180; *Illingsworth* v. *Slosson,* 19 Ill. App. 612; *Cullen* v. *Bell,* 43 Minn. 226; 45 N. W. 428; *Henderson* v. *Vincent,* 84 Ala. 99, 4 So. 180; *Soule* v. *Deering,* 87 Me. 365, 32 Atl. 998; *Mears* v. *Stone,* 44 Ill. App. 444; *McArthur* v. *Slauson,* 53 Wis. 41, 9 N. W. 784; *Baars* v. *Hyland,* 65 Minn. 150, 67 N. W. 1148.

*Carter* v. *Owens,* 50 So. (Fla.) 641, quotes with approval from *Wiggins* v. *Wilson, supra,* and cites numerous authorities not cited in *Wiggins* v. *Wilson,* to entitle a broker to a commission where no sale was actually consummated; the broker employed to find a purchaser must either produce to the owner a customer who is able, ready and willing to buy on the terms prescribed by the owner, or else take from the customer a binding contract of purchase. If the broker employed to find a customer, brings to the owner a person who is able, ready and willing to purchase on the owner's terms, he is entitled to compensation, although he does not make or negotiate a binding contract with the purchaser. 19 Cyc. 255, and notes; 9 C. J. 587; *Carter* v. *Owens,* L. R. A. (N. S.) 736, and notes.

In *McGavock* v. *Woodlief,* 15 L. Ed. (U. S.) 884, it is said: "A broker must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on before he is entitled to a commission."

That a broker is not entitled to a commission until he has procured a purchaser ready, able and willing to buy on the terms prescribed is so unanimously held by the authorities that we think it useless to further discuss this subject.

*Robert B. Mayes,* for appellant.

Before we can be made liable the facts must show that the appellees were the procuring cause of the sale. In 19 Cyc., page 257, the rule is thus stated:

"The facts that a transaction which the broker was authorized to negotiate is finally consummated does not of itself entitle the broker to a commission; he must have been the procuring cause of the transaction, in the absence of some agreement between him and the principal to the contrary, else no compensation is due. This is true, although the broker had negotiated with the person with whom the principal finally contracted; the fact that the broker finds a customer with whom the principal closes a contract without the broker's further aid does not give him the right to a commission, unless he was the procuring cause of the transaction."

This feature of our argument is not exactly pertinent to the subject which we will discuss in this paragraph of the brief, but we make this statement here and cite this authority to the end that the court may get in touch immediately with our contention. We do not deny that the property was actually sold to Mr. Neely, but we do deny that the appellees had ever brought to us a customer able and willing to buy on the terms specified in the original contract, and we do deny that the appellees had any influence in any way in bringing about this sale, and we assert that the facts in the record show that they had abandoned any effort along this line. We are not to be made liable merely because we happened to sell to a party who at one time had conferred with the appellees and negotiated with them in an effort to purchase this property.

No customer was produced ready, able and willing to buy under the terms specified.

We further contend that we should have had a peremptory instruction in this case because the testimony wholly fails to show that there ever was any customer produced ready, able and willing to buy this property on the terms specified.

In the case of *Sutton* v. *Johnson*, 94 Miss. 544, on page 556, this court has already stated the rule upon this

subject as follows: "Where the contract between a broker and his principal specifies the terms upon which the land is to be sold, the broker has performed his duty and is entitled to his commissions when he produces a purchaser ready, willing and able to buy upon the terms specified."

In 19 Cyc., page 255, this decision of our court finds ample supporting authority, and in this authority the rule is stated to be that in order for a broker to be entitled to his commissions he must "find a purchaser who is able, ready and willing to buy on terms prescribed by the owner, or else take from the customer a binding contract to purchase."

The same authority, 19 Cyc., page 261, states that: "A broker who is unsuccessful in effecting a transaction in behalf of the principal is not entitled to a commission upon the success of another broker, unless the principal gives him an exclusive agency or promises to pay him a commission even though another broker is successful. This is especially true where the unsuccessful broker's employment has been abandoned by him or withdrawn by the principal, so if a person introduced by the broker is not able, ready and willing to buy on the terms prescribed by the owner, the broker is not entitled to compensation upon a sale being subsequently made on those terms by the principal to the same person through another broker. "The record in this case shows that all negotiations with Mr. Neely through appellees had terminated on January 8, 1918, and that Mr. Neely took up this matter on his own initative through the instrumentality of Mr. Rucks more than three months afterwards, and after appellees had abandoned all idea of being able to sell to Neely, and after the appellee had taken the property up with third parties and were undertaking to sell to them.

Again, in 19 Cyc., page 263, the same authority states: "It is not every sale to a customer procured by the

broker that will entitle him to a commission, however he must be the procuring cause of the transaction. Hence if a broker fails to bring a customer to terms, and then abandons the negotiations, he is not entitled to a commission upon a sale being subsequently made by the owner to the customer." *Sunflower Bank* v. *Pitts,* 66 So. 810.

Before commissions can be collected from owner, agents must be procuring cause of sale. *Ford* v. *Shaffer, et al.,* 79 So. 172; *Lewis* v. *Manson,* 61 So. 835; *Hauch* v. *Bonnabel,* 64 So. 795; *Lewis* v. *Manson,* 11 So. 835; 4 Am. & Eng. Ency. Law, 978-979; *Taylor* v. *Martin,* 33 So. 112; *Taylor* v. *Jay,* 43 So. 993, Citing other cases; *Wooley* v. *Bachellor,* 169 Pac. 408; *Pryor* v. *Jolly,* 91 Tex. 86.

All of the instructions for the plaintiffs utterly ignore the real case made and permit a recovery to be had under conditions not assented to by the owner of the property. That is to say, upon a different state of facts and under a different contract.

We further call attention to the fact that there is hopeless conflict between instruction number six and instruction number one. For the many errors pointed out in this case, we earnestly insist that this case should be reversed.

*Frank E. Everett,* for appellees.

The owner of a piece of land who puts it in the hands of real estate brokers to sell, fixes a price upon it as a bases of negotiation, and in nine cases out of ten when the broker interests a purchaser at the price fixed by the owner, then the owner and the proposed purchaser are brought together and a sale is consumated at a different price and on different terms than those first given the broker. The owner can change his price at any time he sees fit, but he cannot reduce the price and

sell to the customer of the broker and defeat him in his commissions. It that were true, how easily the owner could cut the price a few dollars when the broker had found a purchaser and conclude the sale with him at a sightly reduced price and defeat the broker in his commission, after he had procured a purchaser. The law does not permit of that sort of dealings. I say the law is where a broker is the procuring cause of a sale, or where a sale occurred as a result of his efforts, he is, then entitled to his commission. And to bear my assertion out, I cite the following authorities: *Enoch* v. *Pikeston,* 87 Miss. 666, and the numerous case there cited: *Long* v. *Griffith,* 113 Miss. 659; *Ferguson* v. *Quick,* 78 So. 718, and this is true where the sale is actually made by the principal and on different terms than those on which the broker was authorized to sell. *Adams* v. *Decker,* 34 Ill. App. 17: *Gilder* v. *Davis,* 137 N. Y. 504; *Plant* v. *Thompson,* 42 Kan. 664; *Corbell* v. *Beard,* 92 Iowa 360; *Wood* v. *Wells* 103 Mich. 320; *Anderson* v. *Maise,* 64 Mo. App. 393; *Martin* v. *Silliman,* 53 N. Y. 515.

And the fact that the sale was made by the principal for a less sum than the agent or broker was authorized to sell for, does not affect him in the collection of his commission. *Smith* v. *Anderson,* 2 Idaho, 495; *Plant* v. *Thomas, supra; Rates* v. *Sheppard,* 37 Kan. 20; *Martin* v. *Silliman, supra.*

"Where a broker authorized to sell land is the procuring cause of the sale made by the owner, he is entitled to his commissions, although the owner made the sale in ignorance of the fact that the broker found the purchaser. 19 Cyc., page 264. 9th American and English Ann. Cases, pge 433.

If a broker has found a customer and begun negotiations, neither the principal nor the customer can break off relations, to defeat the broker's right to recover his commissions. 19 Cyc. 262; *Hadley* v. *Shaffer,* 69 So. 292, paragraph 10.

The broker who first brought the property to the attention of the person who ultimately purchased it, is entitled to his commission as the procuring cause of sale." *Plant* v. *Thomas, supra; Heftan* v. *Chambers,* 121 Miss. 84; *Hadley* v. *Bank,* 73 Conn. 599.

After the broker has brought the parties together and as a result they conclude a contract, he is not deprived of his rights to his commission, by the fact that the contract so concluded differs in terms from the one he was authorized to negotiate. Where for example the principal consumates a sale to a purchaser found by the broker, he is liable for the commissions although the sale is made at a smaller price than that originally proposed by him to the broker. 19 Cyc. page 247, and numerous cases there cited; *Wiggins* v. *Wesson,* 45 So. 1013.

There is but one authority cited by the appellant in his entire brief that has any bearing on the questions at issue and that is the case of *Ball* v. *Dollen,* 15 L. R. A. (N. S.) 272. However, the annotations in the note to that case show that the great weight of authority is contrary to the holding in that case; in addition to that, the cases herein before cited from courts all over the Union differ materially from the holding in the Ball Case.

The evidence well warranted the finding that Neely never abandoned the idea of purchasing after plaintiff's negotiations with him, subsequent to Swain's putting the property on the market the second time, and that plaintiffs did not abandon their effort to obtain him as a purchaser. There was no revocation of plaintiff's agency after defendant's letter of December 6, 1917. There was no notice to plaintiffs of defendant's intention to sell to Neely at less than two hundred and sixty-five thousand dollars.

The sale was the result of plaintiffs' efforts in finding a buyer for Fairfax Plantation. I consider that our court and the great weight of authority would certainly permit plaintiffs to recover under the circumstances of

this case a *quantum meruit* or a ratable proportion of
the agreed commission even though the purchaser paid
not over two hundred and fifty thousand dollars. *Delta,
etc.* v. *Wallace,* 83 Miss. 675-6; *Slotboom* v. *Simpson
Lumber Co.,* Ann. Case, 1915C, 342, "on petition for re-
hearing;" *Smith* v. *Sharpe,* 50 So. 383; *Paschall* v.
*Gillis.* Ann. Cas. 1913E, 782; *Plant* v *Thompson,* 16 Am.
St. Rep. 512; Note on sale on different terms, to *Smith*
v. *Priess,* Ann. Cas. 1913D. 823; *Davis* v. *Clausen,* 57 So.
79; *Howard* v. *George,* 1914C. Ann. Cas. 137.

The defendant contends that even though defendant
may have sold to a buyer procured by plaintiffs, yet
plaintiffs are entitled to nothing at all because they did
not procure a competent buyer on the terms prescribed
by the principal.

In the case of *Cook* v. *Forst,* 22 So. 540, the court
decided in accordance with the prepondeance of testi-
mony that the plaintiff did not procure the purchaser;
however, the court states: "that an owner who has a
fixed net value upon his property has the power to dis-
pose of it at such price if the broker cannot effect the
sale so that the owner may realize such net value, but
fair dealing between the parties would demand of the
owner that he disclose his intention to the broker before
concluding the sale to the purchaser procured by the
broker."

This would seem to be much more so where the owner
had stated to the plaintiffs, as in the present case that
if he sold to a buyer sent him by the agent, that he would
allow the agent the commission just as if the agent had
made the trade. There is no evidence in this record
that the owner disclosed to plaintiffs his intention to
close out the deal with Neely. Although counsel at page
16 of their brief, makes the assertion that Swain testi-
fied that he telephoned Mr. Weeks several weeks before
he traded with Neely that the plaintiffs need not try
further to sell the property." I challenge the record in

this case and assert that no such testimony appears in the record. That is only an attempt to try to come within the "fair dealing" clause in *Cook* v. *Forest*. But when it is remembered that both Hollyknowe and Fairfax were listed with appellees with no reservation as to which place should be sold first and they soon found a purchser for Hollyknowe and the appellant flatly refused to sell it until he had sold Fairfax, I doubt the wisdom of trying to place appellant in that clase.

The case of *Wiggin* v. *Wilson*, 45 So. 1011, is, I think, different from the case at bar in this: "The contract embodied in the letter agreed to pay the commission therein named upon the condition that the plaintiffs should close a sale of the lands at the price and upon the terms particularly specified therein," etc. The language of that part of the contract referred to is: "If you can close deal on these terms, will be willing to pay five per cent commission as per your proposition." The court in that case states the general rule to be that "if a broker has brought the parties together and as a result they conclude a contract, he is not deprived of his right to a commission by the fact that the contract so concluded differs in terms from the one which he was authorized to negotiate. Where for example, the principal consummates a sale to a purchaser found by the broker, he is liable for the commission although the sale is made at a smaller price than that originally proposed by him to the broker, unless the right to a commission is made conditional upon a sale at the price mentioned in the broker's authorization, "and the court construed the contract there under consideration as being within the exception noted to the general rule.

As already noted, the cases of *Carter* v. *Owens, supra,* and *McGavock* v. *Woodlief, supra,* are cases where the owner refused to accept a purchaser on different terms. Of courst, if Swain had refused to accept Neely as a purchaser on different terms, this case would be easily

disposed of in defendant's favor. But defendant says correctly, that this action is not for a *quantum meruit* nor for a recovery *pro rata,* but it is for the recovery of a specific commission agreed on and nothing else; that the declaration is on a special contract an defendant contends that full performance, meaning thereby the procuring of a competent purchaser at two hundred and sixty-five thousand dollars, is a condition precedent to such recovery under this contract.

In a contract not so favorable to the plaintiff as the one under consideration it was announced that the obligation of the plaintiff was not to find a purchaser at a certain figure (Opinion of Brodeur, J., in *Howard v. George, supra*): "The contract was not so favorable to the plaintiff as the one here for the reason that it contained no such stipulation, as if you send buyer to me and I sell him I will allow you the commission just as if you had made the trade."

The declaration in *Delta, etc., v. Wallace, supra,* was on an express contract and not upon a *quantum menuit* (see brief for appellee, page 664): "The price made to the agent was six dollars per acre and the commission was fixed at fifty cents per acre on sixteen thousand acres of land. Plaintiff declared a performance according to these terms and demanded the agreed commission on sixteen thousand acres of land. The proof showed that he was instrumental in selling only about eleven hundred acres at only five dollars and fifty cents per acre. The court permitted him to recover fifty cents per acre, the fixed commission per acre on the amount he sold, although he declared full performance on his special or express contract. One of the counts of the declaration was substantially the same as the amended declaration here.

If as found by the jury, Neely, the buyer, was found and sent by plaintiffs, the defendant, in making the sale himself, was bound by his agreement with plaintiffs to

act for them as well as for himself. Defendant contemplated that a buyer of plaintiffs might come to him direct and therefore provided for that event; and with that in his mind which did actually occur, he agreed that, "If I sell such a buyer (I am not restricted as to terms) then I shall allow you the commission just as if you had made the trade." Plaintiffs also anticipated that Neely might go direct to defendant for plaintiffs wrote defendant, " Should they (Neely or others) make application with you direct, kindly protect us in our commission."

The defendant limited plaintiffs to a certain price in making the sale themselves, but he evidently confied in his own ability and judgment to care for his own interest in handling the matter himself with a buyer sent him by them, and for such contingency he made but two conditions with respect to the commission of plaintiffs; (1) "If you send buyer to me, and (2) I sell him." This construction is certainly not inconsistent with the letter of the agreement and I do not think it inconsistent with its spirit.

I therefore conclude from this particular contract somewhat peculiar in that defendant therein promised to allow plaintiff the commission if he sold to buyer sent him by them, the defendant having ample notice of the fact that he was selling to a buyer sent him by plaintiff and yet giving no notice to plaintiff of that which he proposed to do, as fairness required of him, if for any reason he intended to deny their commission, and not having revoked their agency, that the plaintiffs had the right to claim the specific commission, though the sale was made at a price less than the price made to plaintiffs. It therefore follows, if this be correct, that the amended declaration pleaded the contract according to its legal effect.

Defendant contends that the contract is unilateral. It was when made but because bilateral on performance by Plaintiff. *Taylor* v. *Varvour,* 90 Miss. 888; *Brainef* v.

*Rowe*, 1917E. L. R. A. (N. S.) 1036; *Bank* v. *Pitts*, 108 Miss. 380.

Therefore, I submit that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellees, real estate agents, brought suit against the appellant in the circuit court for five thousand dollars, commission alleged to be due them on a sale of a certain plantation in Washington county. There was a judgment for the plaintiffs in the court below for this sum, with interest from date of sale to the date of the judgment. The contract in substance was contained in the letter bearing date October 27, 1917, which reads as follows:

"Hollyknowe, Miss., October, 27, 1917. Pitts & Weeks, Indianola, Miss.—Dear Sir: Replying to yours of the 25th, you ask for a price on Hollyknowe. I will sell Hollyknowe and Fairfax, too, and below I give you discription and prices. Fairfax plantation: two thousand two hundred and forty three acres in tract one thousand, eight hundred and forty-one acres open and in cultivation. Eighty-three mules. Two saddle horses. Four thousand bushels corn. Seventy-five to one hundred tons alfalfa hay. All farming implements, tools, and all machinery. Price two hundred sixty-five thousand dollars. Terms, all cash, or half cash and bond for balance of purchase price, as this is a minor heir proposition, and the court requires all cash or sufficient bond for balance. Hollyknowe plantation: one thousand, and ten acres in tract. Tile drained. Artesian water. Electric lights. Ninety to one hundred mules. Three horses. All farming implements, tools, machinery of all kinds, including gas engine, logging and road-building equipment. Four thousand bushels of corn. One hundred tons alfalfa hay. I am willing to allow you a commission of ten thousand dollars to sell these two properties.

This is not to be considered an option on these properties. If you send buyer to me, and I sell him, then I will allow you the commission, just as if you had made the trade. I will not sell Hollyknowe plantation, unless I sell the Fairfax plantation; but I will sell the Fairfax plantation, whether I sell the Hollyknowe plantation or not. Please understand this. Cotton seed to plant both properties with this deal, either Express or Polk cotton. Get busy now, Mr. Pitts, and let me hear from you. Yours very truly, W. B. Swain. I want to close these properties up as a cash proposition.''

After this letter was written, the appellant wrote the appellees as follows:

''Nov. 17, 1917. Pitts & Weeks, Indianola, Miss.— Dear Sirs: Referring to my letter of Oct. 27, 1917, in which I named you a price on Fairfax plantation and Hollyknowe plantation. I have decided to takes these properties off of the market, and herewith withdraw the prices made you on same. Kindly acknowledge receipt of this letter. Yours very truly, W. B. Swain.''

To this letter the plaintiffs replied as follows:

''Indianola, Miss., November 19, 1917. Mr. W. B. Swain, Hollyknowe, Miss.—Dear Sir: Replying to your letter of November 17th, we will discontinue offering the Fairfax and Hollyknowe plantations. We are sorry that you have decided to take these off the market, as some day we would have probably run across a man with enough finance to have handled them. We worked hard on the Fairfax place, and had it sold one time, but an old man, Holland, at Clarksdale, persuaded our purchaser not to buy. Should you ever put these properties on the market again, we will appreciate it if you will remember us. With personal regards, and awaiting your further pleasures, we remain, yours very truly, Pitts & Weeks, by W. T. Pitts.''

It is claimed that after this correspondence had passed, in December, the appellant authorized Pitts & Weeks

to relist the property for sale on the same terms as in the letter dated October 27, 1917, above set out, and on December 6th the appellant wrote the appellees a letter containing the following reference to the transaction involved:

"Get busy now, Mr. Pitts, and sell Fairfax but I will not cut the price. Let me hear from you."

The appellees say they readvertised and offered the properties to several parties, among whom was Mr. A. D. Neely, the party who finally purchased it; but Mr. Neely would not offer more than two hundred and fifty thousand dollars, and the appellant had not agreed to accept less than two hundred and sixty-five thousand. It is in the testimony of Mr. Neely, the purchaser, that he had abandoned any idea or purpose of purchasing the property on the terms named by Pitts & Weeks, and had given up the intention of buying the property, when another party approached him, stating that he was a friend of both Mr. Neely and Mr. Swain, and thought he could get them together upon the proposition of purchase, as Mr. Swain desired to sell the property. In pursuance of this suggestion, Mr. Neely got into communication with Mr. Swain, and as a result of their further deliberations Mr. Swain agreed to take two hundred and sixty thousand dollars, and Mr. Neely agreed to give two hundred and fifty-five thousand dollars. When they separated, Mr. Swain told Mr. Neely, if he desired to take his proposition, to ring him up, and Mr. Neely replied that he had made up his mind, and, if Mr. Swain desired to take his (Neely's) proposition, Swain could ring him. About a day thereafter Mr. Swain called Mr. Neely and proposed to divide the difference between them, making the purchase price two hundred and fifty-seven thousand five hundred dollars, which proposition Neely accepted. The transaction was closed up on this basis, after which Messrs. Pitts & Weeks demanded a commission of five thousand

dollars, which was refused, and suit was brought, and the case submitted to the jury, and verdict rendered against Swain as above stated, from which appeal is prosecuted here.

After a careful consideration of the record, we have reached the conclusion that the appellees had not procured a purchaser for the appellant on the terms named in the contract. We think there is no dispute on the evidence of the fact that Neely had abandoned the idea of buying the property on any proposition made through Pitts & Weeks, and that they never procured a purchaser within the provisions of the letter of October 27, 1917, above set out. The party who finally brought Neely and Swain together was not connected with Pitts & Weeks, and it was through the efforts of this party that the final sale was made.

It will be noted that the compensation was to be a fixed sum, and not a percentage of the sale made. We think it was the purpose of the parties that this commission would be paid in the event that the sale was made on the price named in the letter, or on such price as was agreed upon between the parties after being so brought together, but before the negotiations were broken off. After the negotiations were broken off, and the parties had abandoned all expectations of making any trade a new factor entered the negotiations, separate from and independent of Pitts & Weeks, and it was through this party that the sale was finally consummated.

We do not think that it can be gathered from the record of this case that the final deal between Swain and Neely was made for the purpose or with the object of defeating Pitts & Weeks of a commission, but we think on the evidence in this record that the negotiations instituted by Pitts & Weeks ended in a failure to make a sale, and that the subsequent deal was made without reference to the activities of Pitts & Weeks.

We think, therefore, it was error for the court below to refuse to grant a peremptory instruction for the defendant below, appellant here, and the judgment of the lower court will be reversed, and judgment entered here for appellant.

<div align="right">

*Reversed, and judgment rendered.*