MOORE ET AL. v. RICH.

[86 South. 772, No. 21400.]

BROKERS. *Evidence held insufficient to show that broker was efficient and proximate cause of sale.*

Where evidence shows that owner of property placed it in the hands of several brokers to sell, giving none the exclusive right of sale, and several brokers called the attention of the vendee to the property, but only one stopped and pointed it out to him before the purchase at which time the purchaser was not interested in buying it, but subsequently at the request of the purchaser he was again shown the property by another real estate agent, and bought the property through the second real estate agent, the first real estate agent was not entitled to recover a commission, as he was not the efficient proximate cause of the sale.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by Will H. Rich against Emma F. Moore and another. Judgment for plaintiff and defendants appeal. Reversed and judgment rendered.

*Griffith & Wallace,* for appellants.

The principles of law applicable to this care are almost elemental and there are carefully and correctly set forth in the first instruction given for the defendant. Let us take the first proposition in that instruction that "an owner of land may place the same for sale in the hands of as many agents or brokers as he sees fit, so long as no exclusive agency is given to any one of them." It would be idle to contend this is not a correct statement of law without exception or shading, and equally idle to say that is not exactly what was done by the owners of the property in the instant case. It is not only admitted by plaintiff but actually proven by his witness White that several agents were given the same property for sale, and this brings us to the second proposition, that under such circumstances the one who first actually produces a customer, or is the procuring or proximately efficient cause of a sale thereof is entitled to the commission to the exclusion of the other agents or brokers. We can hardly conceive this will be disputed as a proper and correct statement of the law of the case. Indeed it is elementary, and can Mr. Rich be said to have brought himself within its limits? Did he actually produce anyone at any time as a customer, or otherwise? He says he had a prospect but he did not produce him; did not even disclose his identity. If he had a purchaser for the property it must have been one ready, able and willing to buy, at the time and on the terms upon which the agent was authorized to sell. Here the most that was done by Mr. Rich was to show this property to a gentleman who at the time was neither ready or willing to buy, if his own testimony is to be believed and

to whom no terms even had been submitted and it is impossible that a sale could have been agreed upon. The minds of Rich and Dr. Carter were never in accord and before he could claim any sale of the property to have been made by him or through his efforts to entitle him to a commission not only would this have been necessary, but he would have had to bring the minds of his customer and his principal together. *Gardner* v. *Pierce,* 116 N. Y. S. 155; *Brown* v. *Mason,* 21 L. R. A. (N. S.) 328.

Rich never brought seller and buyer together, much less their minds. Can Rich be said to have been the procuring or proximately efficient cause of the purchase by Dr. Carter. The facts show not and Dr. Carter says he was not. He showed him the property and began at most to negotiate a sale. Dr. Carter was told the price, according to Rich, and that was the extent of the negotiations. Dr. Carter left without knowing even the terms on which he could buy. Rich himself did not know them. There was no meeting of minds between any persons, no definite or binding contract or agreement made; no customer produced or identified to Mr. Moore or Captain Smith. Rich was not the original discoverer of the customer. The negotiations begun by Rich did not continue without interruption to an agreement or sale, nor was he instrumental in any way to the consummation of such agreement or sale. It cannot be said or claimed that Rich or any effort of his was the cause of originating a series of events which without break in their continuity resulted in the accomplishment of the prime object of the agency, i. e., the sale of the property, and all these things are necessary here.

Rich was not the means of bringing the buyer and seller together; the sale was not consummated through his efforts, and even though it be admitted that if his showing the property to Dr. Carter might to some extent have influenced him to make the purchase subsequently, that is not sufficient to entitle Rich to a commission. Dr. Carter's testimony shows he was not influenced by Rich, and the

facts show the same. Even had Rich been the first agent to show the property to Dr. Carter, and it be further admitted Rich's work made some impression on him or had something to do with the subsequent sale, still that would not entitle him to the commission. *White* v. *Sellmeyer,* 157 Ill. App. 435; *Carin* v. *Mills,* 134 S. W. 55.

We will burden the court with no further citations in support of all these seemingly elementary propositions set forth in this instruction and our argument here, further than to refer to 9 C. J. "Brokers," sections 85 to 100.

MIZE & MIZE, for appellee.

Corpus Juris, which is cited by counsel for appellants, at section 95, p. 611, lays down the rule to be, that the broker who is the procuring cause of the sale, is entitled to the commission, in part saying: "If, however, the transaction which the broker was authorized to negotiate is consummated as the direct and proximate result of his efforts, he is entitled to a commission, and this is true even though he may have had no personal intercourse with the person with whom the principal enters into the contract;" and at p. 603, lays down the same proposition, that where there is more than one broker authorized to sell, the one who is the procuring or efficient cause of the transaction is entitled to the commission.

Now, then, summing up, here is what the jury had before them on which to base their verdict: (1) That Rich was authorized to sell the property and that he took Dr. Carter to the property twice and interested him in it on a trip to show Dr. Carter other property he had asked to see, and that after he had been shown the property on Friday by Mr. Rich, Dr. Carter purchased it the following Monday.

(2) That on Saturday prior to the Monday of the sale Rich informed Smith, appellant's agent, that he had a good prospect for the property who was very much interested in it.

(3)　That Dr. Carter asked Perkins to show him the Moore property after Perkins had brought him back from a trip to look at property in North Gulfport, and after Dr. Carter had gotten out of the automobile; and that Perkins had never suggested in any manner to Dr. Carter anything about the Moore property.

(4)　Carter's testimony that Rich had shown the Moore place to him twice and explained to him that he could build houses on the rear of the property and that it was only two and one-half blocks from the factory of Dr. Carter, and that he would not deny that he had made the statement of Rich that Rich was the man that had brought the Moore place to his mind as a purchase, and that he could not say but what Rich had considerable to do with his buying it.

(5)　The circumstance that, after having had the property shown to him on Friday by Rich, at which time he seemed interested in it to such an extent that Rich told Smith on Saturday that he had a prospect who was much interested in it, Dr. Carter concluded the sale on Monday, having had the Broker Perkins take him to see it entirely on Dr. Carter's own request.

(6)　That Rich had indicated these facts to Smith, and Smith knew before he closed the deal through Perkins that Dr. Carter had been shown the place by another man before he went there with Perkins, but that Dr. Carter could not remember his name, Smith at that time also knowing that Will Rich had told him two days before that he had shown the place to a man who was much interested in it.

So we submit that the testimony was abundant on which the jury could base the verdict as rendered. *Jennings* v. *Trummer,* an Oregon case, 96 Pac. Rep. 874; *Levy* v. *Wolf,* 84 Pac. 313; *Beougher* v. *Clark,* 81 Kan. 250, 105 Pac. 39; *Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599; *McCormack* v. *Henderson,* 75 N. W. 171; *Hamilton* v. *Fort,* 78 N. W. 498; *Wood* v. *Wells,* from the Supreme

court of Michigan, reported in 61 N. W. 503; *Krohn* v. *Mississippi Valley Trust Co.,* 85 Mo. App. 601.

*Corpus Juris* lays down the proposition, citing a number of authorities, that although the sale be made on better terms than those authorized, the agent is still entitled to his commission if he is the procuring cause.

See Corpus Juris;, sec. 89, p. 600. Other authorities to the same effect could be cited, but we think that these are sufficient, and the question here is the application of the law to the facts. The law was properly given to the jury in all of the instructions for plaintiff and in a very lengthy instruction for the defendants, appellants here and the jury found for the appellee.

SYKES, J., delivered the opinion of the court.

The appellee as plaintiff in the circuit court sued and recovered a judgment against the appellants for four hundred and fifty dollars as a commission due him as a real estate agent for effecting the sale of certain property belonging to the appellants. A peremptory instruction was asked and refused the defendant in the lower court. The material facts in the case are as follows:

The appellants had notified several real estate agents to try and sell this property. No exclusive right to sell was given to any of them. Among those with whom the property was listed for sale were the appellee and a Mr. Perkins. As the only question before the court is whether or not the appellee was the efficient and procuring cause of the sale, it will be necessary to set out in detail the testimony of the appellee, because the jury accepted this testimony as true. The appellee testified in effect that the property was listed for sale with him for eight thousand dollars by the appellant Judge Moore, and his son-in-law, Mr. Smith, who was the agent of the appellants; that on the 11th or 12th of December, 1919, that he had some property listed for sale at Long Beach, known as the "True Property;" that Dr. Carter, who subsequently

bought the property from appellants, wanted to see this True property, and that he took Dr. Carter out to see it in his automobile; that he believed Dr. Carter would be interested in the Moore property, and he showed him the Moore property as they passed it en route to Long Beach, explained the value of the property to him and called his attention to the dimensions, and what he, the appellee, thought Dr. Carter could do with the property, and why he thought it would be the best purchase for him to make; that he showed him where he could build a couple of houses on the back, and told him the terms on which it could be purchased; that they looked at the True property at Long Beach and another piece of property, and then he brought Carter to town and stopped by the Moore property again; that Dr. Carter wanted to stop again, and instead of bringing him to the front he took him to the side street, showed him the depth of the lot, then took him to a restaurant for lunch; that Dr. Carter at that time told him he did not know about the property, and did not have time to go in, though he tried to get him to go in; that Dr. Carter told him if he was further interested, he would let him know. This was on Friday. On Saturday the appellee saw Mr. Smith, the agent of the appellants, and told him that he had shown the property to a man who was very much interested.

In another place he testifies that he told Mr. Smith "that I had a good prospect, and thought I would be able to tell him definitely about the house about the first of the week, and he said, 'All right; go to it;'" that appellee was not able to come to town again until Tuesday evening, at which time he went to the fair grounds to see Dr. Carter, and was informed that Dr. Carter was out of town, and also learned that Dr. Carter had purchased the Moore property the day before through Mr. Perkins; the price mentioned by the appellee to Dr. Carter was eight thousand dollars; the price paid for the property was nine thousand dollars; that after learning of the sale appellee went to see Mr. Smith, and asked him how he came to

make the deal through Mr. Perkins, and that Smith said, "I did not know that was your man; I waited a whole day before I closed up with Perkins, to find out if he was your man." I said, "Why didn't you phone me; I was at home." He said, "I did not think about it." The appellee testified that he did not have the exclusive agency for the sale of this property. This, in substance, was all of the material testimony on behalf of the appellee.

Mr. Smith testified that he called several times at the office of the appellee, to find out whether or not the appellee had been able to sell the land to his prospect, but appellee was not in his office. In fact, the record shows that appellee at that time was detained at home on account of illness. Neither the appellants nor Mr. Smith knew that Dr. Carter was the "prospect" referred to by Mr. Rich in his conversation with Mr. Smith. The effect of Dr. Carter's testimony is that on the way to Long Beach Mr. Rich stopped in front of the Moore property and talked to him about the desirability of the place, but that at that time he had no intention of buying this property; they then went down and looked over the True property, and on their way back Mr. Rich again stopped the car in front of the Moore property for a few minutes, but that he did not remember what Rich had to say about the Moore property, for he did not consider buying it at that time; that a short time after that Mr. Perkins had him out showing him several other places in town, and upon their return to the fair grounds and after he had gotten out of the car he asked Mr. Perkins if he could show him the Moore property—that he would like to look inside of it; that they looked through the house, and then went to Mr. Smith's office, where the sale was consummated. He does not remember whether Mr. Rich made him any price on the property or stated any terms of sale. He was then asked if any other real estate agent had ever shown him that property, to which he replied:

A.   I had been out with several—some three or four— real estate men, and had seen the property, and we had

talked a little about the property in passing, but had not stopped and gone in.

"Q. Had you been advised it was for sale by other real estate agents? A. I was advised it was for sale, but I was not interested.

"Q. And you said you were not interested at the time it was shown you by Mr. Rich? A. No, sir; at that time I was not interested."

He testified further that the first time he ever stopped and looked at the property was with Mr. Rich. A part of his cross-examination is as follows:

"Q. Mr. Perkins did not suggest to you coming to see the Moore property at that time? A. No, sir; I asked him if he could not carry me to see it.

Q. You did come down and view the property again? A. I came with Mr. Perkins, and I went through the house at that time.

"Q. The reason of that was because Mr. Rich had showed it to you the day before, and you had your mind on it? A. I can't say that is true; something else arose during the night or morning that caused me to think about wanting this property. I can't say positively that Mr. Rich did not have something to do with putting the property in my mind."

Mr. Perkins was paid a commission for the sale of this property. From this testimony it is manifest that the appellee, Rich, was not the efficient and proximate cause of the sale of this property, and is therefore not entitled to recover this commission.

It is undisputed in the record that several other real estate agents besides Mr. Rich had mentioned this Moore property to Dr. Carter, though Mr. Rich was the first one who stopped in front of the property and pointed it out to Dr. Carter. It is manifest from Dr. Carter's testimony that Mr. Rich did not interest him in the property at that time. In fact he was so little interested in it that he failed to remember that Mr. Rich had priced it for one thousand dollars less than he paid for it a day or two

later.    Dr. Carter further testified that "something else arose during the night or morning that caused me to think about wanting this property;" what that was the record does not show.    The appellee in this case did not inform the appellants, nor their agent, that Dr. Carter was a possible purchaser;    neither did he bring the vendors and Dr. Carter together.

A case where the material facts are similar to these is that of *Glascock* v. *Vanfleet,* 100 Tenn. 603, 46 S. W. 449. See also 9 C. J. 611, section 95 et seq.;    4 R. C. L. section 57, p. 319;    *Ward* v. *Fletcher,* 124 Miss. 224;    the note to the case of *Hoagley* v. *Savings Bank,* 44 L. R. A. 321, also reported in 71 Conn. 599, 42 Atl. 667.

The peremptory instruction requested by the defendants in the court below should have been given.    Reversed, and judgment in this court for the appellants.

Reversed, and judgment here for appellants.

*Reversed.*