REYNOLDS *et al. v.* ALEXANDER *et al.*

(Division B. Feb. 27, 1933.)

[146 So. 305. No. 30465.]

Wasson & Wasson, of Greenville, for appellants.

W. Scott Watson, of Greenville, for appellees.

Argued orally by **B. F. Wasson,** for the appellant, and by **W. Scott Watson,** for the appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

T. P. Reynolds, acting for and on behalf of his wife, listed with George B. and G. G. Alexander, composing the Alexander Realty Company, a plantation for sale, stating the net price to be forty-nine thousand dollars, cash net fifteen thousand dollars, terms assume twenty-five thousand dollars due one and two years. The listing contained the following: "Will split this place up in one-half for fifty dollars per acre." The lands were described as being in Washington county, Miss., and containing one thousand, two hundred fifty acres cultivated; cut over one hundred fifty acres; nearest post office, Chatham; nearest railroad, Greenville, Mississippi; character of soil, sandy loam; number miles from railroad, three and one-fourth miles; nearest high school, one-half

mile; name of tract, Oakgrove plantation; staple crops, cotton, corn, alfalfa; yearly value of crops, thirty thousand dollars; live stock, two thousand, five hundred; cash rental, ten dollars per acre, or crop rental one-fourth and share; incumbrances, twenty-five thousand dollars due Southwest Mortgage Company, interest seven per cent, due 1936; yearly taxes six hundred dollars and twelve cents; price forty-nine thousand dollars, cash net fifteen thousand dollars, terms of sale assume twenty-five thousand dollars, mortgage balance five thousand dollars per year. Will assume or pay difference of thirty-four thousand dollars.

After this land was listed with the Alexander Realty Company, said company received a letter from W. H. Rucker of Itta Bena, Mississippi, desiring, or inquiring as to a tract of land of about eight hundred acres which could be traded on a fair basis for a block of brick buildings in a good Delta town. There was some correspondence between the Alexander Realty Company and Rucker, and Rucker went upon the Reynolds tract and looked at it, and a number of other tracts listed with said realty company. Rucker owned about twelve brick buildings upon a lot in Sumner, Tallahatchie county, Mississippi, which he desired to trade for a plantation.

It appears that G. G. Alexander went to Sumner and looked at Rucker's buildings, but the negotiations did not result in a trade. The last correspondence between the Alexander Realty Company and Rucker was had on November 1, 1929, when the Alexander Realty Company wrote to Rucker as follows: "We have had another interview with Mr. Reynolds and he has agreed that he will deed you about nine hundred acres, which was pointed out to you on your last visit here, if you will deed him your buildings, in Sumner, pay him twelve thousand dollars cash, and assume loan of nineteen thousand dollars. We also saw Mr. Pullen and he agreed to trade (another

plantation) subject to inspection of your property if you will assume loan of seven thousand dollars and pay him fourteen thousand, two hundred fifty dollars cash. Of course, this last proposition will be subject to the approval of Mr. Pullen of your property.''

On November 2, 1929, Rucker replied to this letter as follows:

''I have yours of first inst. Both the Reynolds and Pullen proposition are much out of line with my views. The property I offered is out of debt, in such state of repairs that none will be required for several years. No furnish bills or waiving rent, all above taxes and insurance is profit, hence no losses. Maybe that accounts for substantial bank deposits. Both properties offered me in debt, repairs very bad, losing owners money daily. They would take thousands to put in successful operating condition. Prices put originally were high enough on both of these: I see no reason to donate my property and rush into heavy expense, pay debts, lose sleep over furnish bills, etc., with all of which I am familiar, unless on basis that would enable me to make profits and keep out of debt. If, say fifteen thousand dollars boot on Reynolds tract or five thousand dollars on Pullen place, and debts free or arranged, would interest parties we may discuss. Otherwise, will take up other offers.

''About two hundred or two hundred and fifty of Reynolds tract on North would be uncertain for cotton on account of ''seep water'' which should be considered. The Pullen place would require ten thousand dollars or fifteen thousand dollars in improvements to start a profit, to say nothing of furnish, and about as much or more for the Reynolds land. If either of them wish to shift the load on basis of real value, we will consider, but not otherwise.''

Subsequent to this time, Reynolds was in Indianola and had a conversation with Pitts, a real estate man

there, in which he stated there was nothing to Rucker and that he wanted something for nothing. Pitts told Reynolds that he was mistaken, that Rucker wanted to, and would, buy a plantation, and suggested to Reynolds that he (Pitts) see Rucker with a view of making a trade, and the result was that such trade was consummated, by which Rucker bought the Reynolds plantation consisting of one thousand, four hundred and nine and five-tenths acres, agreeing to pay Reynolds therefor seventeen thousand five hundred dollars cash, and convey to him twelve stores and offices in Sumner, Mississippi, located in the block with the post office therein; and, in addition, to assume and agree to pay twenty-five thousand dollars incumbrance on the Reynolds land to the Southwest Mortgage Company. It was provided in the contract that Reynolds was to pay all interest on this mortgage up to November 15, 1929, and all taxes including the 1929 taxes. The parties were to furnish abstracts, and time was given to have these prepared and passed upon, and it was provided that if for any reason the contract was not carried out, certain rents were to be paid. The contract was also made subject to a lease, for three years, made to one Armstrong. The contract was made on December 6, 1929, but the final deeds were not made until the early part of the following year.

After the making of this contract of sale by Reynolds with Rucker through the agency of Pitts, G. G. Alexander met Reynolds, and, having heard of the transaction, asked Reynolds about it, and was told that he had made the sale, whereupon Alexander expressed pleasure saying that he would receive a nice commission. Reynolds stated to him that he did not see where Alexander had any commission coming.

George B. and G. G. Alexander then brought suit for a five per cent commission. Pitts was paid a commission at the time the contract of sale was made of five per cent

on the difference between the value of the brick buildings and the sale price of the plantation. There was some little conflict about the details of the transaction, but no substantial conflict. There was a judgment in the court below against T. P. and Pearl E. Reynolds for one thousand, five hundred dollars, from which judgment this appeal was prosecuted.

From the statement of this case, it will be seen that there was no purchaser produced by the Alexander Realty Company ready and willing to buy upon the named terms, nor was there any purchaser produced upon the terms subsequently named in the proposed sale of nine hundred acres of land. The claim of the Alexander Realty Company for a commission is based upon the fact that they had shown Rucker the plantation, and that Reynolds had subsequently sold the plantation. There was no exclusive agency given to George B. and G. G. Alexander, and it was not a case of bringing the seller and purchaser together, where no terms of sale had been specified.

We think the sale was made through the direct and proximate effort of Pitts, and that the terms of sale there made are different from those at which the Alexander Realty Company was permitted to make the sale.

There is nothing to prevent a party having land for sale from listing it with more than one agent or broker. If he lists it, without naming the terms of sale, with several parties, the one whose offorts first produce a purchaser is held to be entitled to the commission. But, where the terms of sale are named, the broker or real estate agent must produce a purchaser who is ready, willing, and able to buy upon the named terms; and, unless he has an exclusive agency, the seller may sell through another broker or real estate agent under different terms, unless the facts make it appear that the transaction was a mere subterfuge to defeat the broker of his commissions.

We think the case at bar is controlled by the cases of Swain v. Pitts, 120 Miss. 578, 82 So. 305, and Moore v. Rich, 124 Miss. 283, 86 So. 772. In the case of Swain v. Pitts, supra, the rule is stated in the syllabus as follows: "Brokers who are authorized to sell property at a certain price and promised a certain amount as compensation if they procured a purchaser, are not entitled to a commission, though the one with whom they had negotiations which ended in failure, after abandoning the idea of buying on any terms made through the brokers, was induced by a friend and the owner to buy the property at a reduced price."

There is some difference in the particular facts of the Swain v. Pitts case from the facts in the case at bar, though they are governed by the same principles.

In the case of Moore v. Rich, supra, in the syllabus it is stated that: "Where evidence shows that owner of property placed it in the hands of several brokers to sell, giving none the exclusive right of sale, and several brokers called the attention of the vendee to the property, but only one stopped and pointed it out to him before the purchase at which time the purchaser was not interested in buying it, but subsequently at the request of the purchaser he was again shown the property by another real estate agent, and bought the property through the second real estate agent, the first real estate agent was not entitled to recover a commission, as he was not the efficient proximate cause of the sale."

In Hollister v. Frellsen, 148 Miss. 568, 114 So. 385, in the syllabus, it is said that: "Where a unilateral contract is signed by a party, it may be withdrawn at any time before the other party has performed an act binding the contract upon his part."

In the case at bar, there was no contract made between the Alexander Realty Company and Rucker, nor does it appear that Rucker would ever have made the purchase

upon the terms offered by said realty company, nor does it appear that the sale made through Pitts was, in any respect, a subterfuge to defeat the Alexander Realty Company of its commission.

The appellee, the Alexander Realty Company, relied upon the cases of Jenny v. Smith-Powell Realty Company, 125 Miss. 608, 88 So. 171; Roell et al. v. Offutt, 138 Miss. 599, 103 So. 239; Skermetti Realty Co. v. Devitt et al., 145 Miss. 815, 111 So. 302; Frellsen v. Hollister, 156 Miss. 169, 125 So. 723; and Tupelo Hotel Company v. Long, 156 Miss. 337, 126 So. 6, 7.

We think these cases, on their face, are different from the case at bar, and that the court was controlled by different principles from those applicable here.' In Skermetti Realty Co. v. Devitt, supra, the following principles are announced: "Where contract between broker and principal specifies terms on which land is to be sold, the broker performs his duty and is entitled to commission on producing purchaser ready and willing to buy on specified terms."

That was not complied with in the present case. There was no offer to produce a purchaser on the specified terms, nor does it appear that there was any probability of making the sale on the named terms.

In the third syllabus in the Skermetti case, supra, it was said that: "Where contract between broker and principal does not specify terms of sale, and actual sale is to be made by principal, broker's duty is not performed until he produces purchaser to whom principal sells."

These principles are not applicable to the present case, because the terms of sale were specified in listing the property with Alexander Realty Company.

The mere fact that the Alexander Realty Company had negotiations with Rucker, and the owner subsequently sold to him on different terms, does not entitle

the realty company to commissions. As was stated in a previous part of this opinion, there was no exclusive agency, nor was there any purpose manifest in the record to circumvent the efforts of the Alexander Realty Company in making the sale.

In the case at bar, the activities of the Alexander Realty Company did not show that it was the procuring cause of the sale.

In the case of Roell v. Offutt, 138 Miss. 599, 103 So. 239, supra, it was announced that: "Where the terms of sale are not specified in the contract of employment between a real estate broker and his principal and the actual sale is made by the principal, still the broker has performed the contract and is entitled to his commission when he produces a purchaser to whom the principal sells."

That is not applicable here because the terms of the contract were specified. There was no purchaser produced ready and willing to purchase upon the terms named.

The case of Tupelo Hotel Co. v. Long, 156 Miss. 337, 126 So. 6, 7, is also a different case from the case at bar. There it was manifest that the transaction between the hotel company and the purchaser was made with the understanding that the broker would get his commission regardless of whether he made the sale, or the hotel company made the sale. It is true there was direct and palpable conflict as to what the facts were in that case, but the trier of the case found for the broker, and, taking this theory of the case as being true, the decision was correct.

We think the judgment of the court below was wrong, and the judgment will be reversed, and the cause dismissed.

Reversed and dismissed.