PARTEE *v.* PEPPLE *et al.*

(In Banc. Dec. 11, 1944.)

[20 So. (2d) 73. No. 35717.]

Frank E. Everett and J. M. Forman, both of Indianola, for appellant.

Cooper & Thomas, of Indianola, Wm. F. Taylor, of Drew, and H. Lee Herring, of Ruleville, for appellees.

Argued orally by Frank E. Everett, for appellant, and by Forrest G. Cooper, for appellees.

**McGehee, J.,** delivered the opinion of the court.

This appeal is from a decree of the chancery court which dismissed the bill of complaint of the appellant, Charles W. Partee, a real estate agent who sued to recover of the appellees a 5% commission on the sale of a Delta plantation owned and sold by the appellees, W. O. Pepple and wife, to their co-defendant and appellee, J. V. May, allegedly through the efforts of the appellant Partee and pursuant to a contract between him and the owners of said land in that behalf. At the conclusion of the evidence offered by the complainant, there was a motion to exclude the same and to render a decree in favor of the defendants. This motion was by the court sustained, and the complainant has prosecuted this appeal.

The bill of complaint was sworn to and waived answers under oath. There was filed as an exhibit thereto a written contract entered into between the complainant Charles W. Partee and the defendants W. O. Pepple and wife, dated July 9, 1942, granting the right and option unto the complainant, or his designee, to purchase the lands therein specifically described and stated to contain ''1,080 acres more or less,'' and obligating the said owners to convey the same to the said Charles W. Partee, or his designee, at any time from and after that date up to and including the 5th day of September, 1942, at the purchase price of $75 per acre, less a 5% real estate agent's commission thereon. Then, in a subsequent paragraph of the contract, it was provided that if such right so granted should be exercised on or before December 1, 1942, a contract of purchase and sale should be executed by the parties of the first part and the party of the second part, or his designee, and that thereupon the parties of the first part were to furnish promptly an abstract of title to said land and give fifteen days for an examination of the title after the delivery of such abstract, the delivery of possession of the property to be made on January 1, 1943. There was also filed as exhibits to the bill of complaint

certain correspondence between the complainants and the defendants dated subsequent to the execution of the above mentioned contract and which will be hereinafter discussed.

The answers, unsworn to, of each of the defendants were duly filed denying all of the material allegations of the bill of complaint. In the answer of W. O. Pepple and wife, there was incorporated a cross-bill which reaffirmed all of the denials contained in their answer and asked that the contract between themselves and the said Charles W. Partee be reformed on the ground that the date for the expiration of the contract was originally written therein so as to read December 1, 1942, and that by agreement of the parties it should have been changed at the time of its execution so as to read September 5, 1942, and that the date was accordingly changed in one paragraph thereof, but through mutual mistake was left to read December 1, 1942, in a succeeding paragraph. This was the only relief sought by the cross-bill, which was unsworn to and did not waive answer under oath. The complainant's answer thereto was under oath and denied the alleged mutual mistake; and upon the trial, he testified that the contract was actually executed was in accordance with the intention of the parties and that he was to have until September 5, 1942, to produce his prospective purchaser and be given until December 1, 1942, to close the sale. In this state of the pleadings, it will be readily seen that the pleadings filed on behalf of the defendants and cross-complainants did not avail them as evidence to meet such proof as was offered by the complainant Charles W. Partee.

The complainant testified as a witness in the case, after having taken an order dismissing his suit as to Mrs. W. O. Pepple, who had died since the commencement thereof. At the time of the trial, W. O. Pepple was still living but was in such state of ill health that he could not be present in court. There was an agreement to the effect that his deposition might be taken before the defendants were

required to rest their case, but which was not done due to the fact that the trial court sustained the motion of the defendants to exclude the evidence offered by the complainant. The said W. O. Pepple died subsequent to the trial, and the cause was revived against the administrator of his estate.

The complainant testified over the objection of the defendants that he advertised in the Commercial Appeal in January, 1942, for a Delta plantation consisting of eight hundred to twelve hundred acres of sandy loam land, for a client; that the Pepples answered such advertisement by writing him a letter, offering their land for sale; that thereupon and within less than two weeks he drove down from Memphis in his automobile to the home of the Pepples, located about four miles east of Ruleville, Mississippi, and obtained the necessary information regarding the nature and character of the land, the kind and condition of the improvements, etc.; that he left a blank application with the owners to be filled out in confirmation and elaboration of the memorandum which he had taken on the occasion of his visit to their plantation, and that this blank application was later mailed to him by Mr. Pepple without being filled out or signed but with an endorsement thereon to the effect that ''It will be O. K. for you to handle the place. Might be well to come down and let us have a little more definite agreement.'' Objection to all this testimony was sustained on the ground that these negotiations occurred prior to the execution of the written contract on July 9, 1942, but the witness was permitted to use the memorandum to refresh his memory. However, we can lay aside these prior negotiations in reaching our decision in this case and consider only the said written contract and what transpired subsequent to its execution and in pursuance thereof.

It was shown that, following the execution of this contract, the complainant inserted frequent and repeated advertisements in the Commercial Appeal, at his own ex-

pense, disclosing the nature and character of the plantation, its approximate acreage, price per acre, location with reference to an improved highway, bus line and mail route, the number of tenant houses, character of the main residence, and the fact that it was supplied with artesian wells, electricity, telephone, commissary, gin system, etc., and that the land was encumbered by a $4\frac{1}{4}\%$ easy term loan for much more than half of the purchase price required, and further stating that the land was offered for sale because of the serious illness of the owner.

On August 3, 1942, the defendant J. V. May of Mayhew, Lowndes County, Mississippi, who was acquainted with the complainant Partee and willing to negotiate with him for the purchase of the property in question, answered one of these advertisements, stating in his letter that he had sold his own plantation in the Delta several months prior thereto, made it known that he was interested in buying this land, that he wanted to see it, and requested the name of the owner and the location of the place in order that he might go and inspect it at such a time as he could arrange to do so. He also stated in this letter that he would tell the owner upon his visit of inspection that the said agent Partee "told me to drive by and look the place over," and that he would thereafter get in touch with the latter in regard to the matter. Mr. Partee replied to this letter on August 5th, stating that the place was known as the W. O. Pepple plantation, located four miles east of Ruleville, and giving Mr. May specific information as to how he could get there. On that same day, he wrote the Pepples and also sent them a copy of the letter which he had written to Mr. May, thereby fully informing them of his prospective purchaser, whose interest had been aroused solely by the repeated and detailed description of the property carried in the Commercial Appeal at the instance and expense of such agent as aforesaid. Thereafter, complainant further contacted his prospect by telephone, when it was ascertained that he was still interested in the place, but

was unable to state just when he could arrange to go and inspect the same due to the fact that he was conducting some livestock sales over in Lowndes County where he resided. Subsequent to this conversation, the complainant wrote another letter to Mr. May on September 3, 1942, in regard to the matter, but the proof now before us fails to disclose whether or not Mr. May looked at the plantation at any time prior to September 5, 1942.

However, after the expiration date of September 5, 1942, stated in the contract between the said Partee and the Pepples, the parties continued to deal with the contract the same as if it were still in full force and effect. From the 15th to the 18th of September, Mr. Partee, acting alone and also in co-operation with another real estate agent was still showing the plantation to their several prospects with the knowledge and acquiescence of the Pepples, and without any question being raised by the latter in regard to the written contract with the said Partee having expired by its terms. The proof discloses that they were still willing to sell their land to any of his prospects who were willing to buy upon the terms theretofore authorized, that is to say, $75 per acre. In fact, on September 19, 1942, when it was known to them that the agents were continuing their efforts and negotiations to sell the land on the terms specified in said contract, and under the authority claimed by the complainant thereunder, they were requested to wait a few days on account of Mr. Pepple being physically unable to further discuss the matter at that time. A few days later when Mr. Partee was en route to negotiate further with them in regard to a sale to one of his prospects, he learned that the Pepples had closed a contract of sale on September 23, 1942, with the said J. V. May, whereby the latter had put up $10,000 in cash as earnest money under a written contract of sale, duly recorded, and wherein it was agreed that Mr. May was to pay $78,500 for the plantation, described as containing 1,042 acres more or less, and as being "all of the lands owned" by the Pepples in the

governmental subdivisions mentioned in the Partee contract. That is to say, the said J. V. May obligated and bound himself to buy the same land at the price of $75.33 per acre. And the answer of the defendants admitted that the lands were sold to the said J. V. May as shown by the said contract of purchase so entered into between him and the Pepples.

Subsequent to the execution and recordation of the contract of sale above mentioned, and prior to December 1, 1942, the deed of conveyance was executed and delivered to the said purchaser, thereby finally closing the sale of all the land involved in the contract theretofore executed by the grantors in favor of the complainant Partee, and at a price not less than that at which the grantors had agreed for him to either buy or sell the same.

It was sought to be shown by the complainant that the discrepancy between the 1,080 acres mentioned in the Partee contract and the 1,042 acres actually sold to Mr. May was due to the fact that the Pepples had prior to the execution of the contract with Mr. Partee sold certain rights-of-way for public roads, drainage canals and power lines, which were not deducted from the acreage mentioned in their contract with Mr. Partee, but which rights-of-way were taken into account in the contract of sale made between the Pepples and the said J. V. May.

Since the complainant was without authority to have the land surveyed, he undertook to prove by the tax assessor of the county that the Pepples were assessed with and paid taxes on only 1,042 acres of land, the testimony of such officer being offered upon the theory that the law required that the Pepples be assessed with all of the lands that they owned and no more, and that they should pay taxes on all of the land they owned and no more, and that since the public records required to be kept disclosed their ownership, assessment and payment of taxes on the basis of a certain acreage of land, such testimony was admissible in evidence in view of the fact that it was within

the power of the defendants to introduce better evidence as to the quantity of the land if the same was desired by them. We think that under the circumstances this evidence was competent, although it was unnecessary to the complainant's case that such proof be made for the reason that the answer of these defendants had expressly admitted that the land was sold by them to Mr. May as shown by the contract between them, dated September 23, 1942, as aforesaid, made an exhibit to the bill of complaint, and which said contract stipulated that the 1,042 acres described therein was all the lands owned by the said Pepples.

But, it is urged by the appellees that the complainant had only an option to purchase the land, either in his own name or that of his designee, as authorized by the written contract of July 9, 1942; and that, having failed to exercise such option in his own right or in the name of his customer within the time allowed by the contract, he is not entitled to recover the 5% commission therein mentioned as a deduction from the purchase price at which the land was sold. The provisions of the contract which are material to this inquiry are, in substance, as follows: (1) That the owners of the land desired to sell the same at $75 per acre ''less a real estate agent's commission of 5% on the total purchase price''; (2) that the complainant Partee, or his designee, was granted the right by one provision of said contract to purchase the land at any time up to and including the Fifth day of September, 1942, at the price aforesaid and less the 5% real estate agent's commission; and (3) that it was provided by a subsequent paragraph that if the right conferred was exercised on or before December 1, 1942, a contract of purchase and sale would be promptly executed by the owners of the land in favor of the second party, or any purchaser designated by him, upon payment of the earnest money in escrow pending the examination of the abstract of title and the closing of the sale.

The text writer, in Vol. 66, C. J. 492, in discussing the distinction between an option to purchase and a broker's contract creating an agency to sell, says: "The intention of the parties as expressed in the contract will determine whether a particular agreement constitutes one or the other of the relationships, and what purports to be an option will ordinarily be construed as creating an agency relation if the circumstances show an intent to do so. However, where the option is a mere form of agency given to secure to the agent control of the negotiations, or to lend to him the appearance and character for its effect on third persons, and it is not contemplated that the optionee should acquire title or become a purchaser, the contract will be held to involve an agency and not a vendor and purchaser relationship. There is nothing inconsistent in a contract which creates an agency to sell and also gives the agent an option to purchase during his agency."

And, in Vol. 12, C. J. S., Brokers, sec. 20, p. 63, it is stated: "The use of the word 'option' as known among real estate people does not necessarily import an option to buy only, as there may be an option to sell as well as an option to buy, and a contract giving a broker an option on certain real estate, to sell it, gives him authority to sell."

An option which merely grants to the optionee the right to purchase the land involved, either in his own right or in the name of someone to be designated by him, does not ordinarily contain the provision found in the contract now before us allowing a deduction of "a real estate agent's commission of 5% on the total purchase price of said land." It would seem evident that the owners of the land were thereby agreeing to accept the purchase price of $75 per acre, less the real estate agent's commission therein stipulated, if the agent should procure a purchaser at that price, whereas the owners received from Mr. May and retained the entire purchase price without paying

anything to the agent for his services. So far as the proof discloses, Mr. May would never have become interested in the land or have learned the name of the owner, and in what county the plantation was located, except for the information furnished him by the complainant through the newspapers and by letter and telephone. Moreover, the owners of the land evidently knew from the newspaper advertisements, if they saw them, and from the correspondence, as well as the frequent visits made by the complainant in showing the plantation to his several prospects, that the complainant was dealing with the contract as one of the agency to sell the land. If, therefore, the agent produced a purchaser to whom the owners sold the land, it would appear to be immaterial whether the contract of sale was executed before or shortly after the 5th day of September, 1942, if the same was executed at a time when the owners were continuing to accept the services of the agent in his efforts to sell the land at the price authorized without raising any question as to whether or not the contract had expired by its terms.

The authority from an owner of land in favor of another to sell the same is not required to be in writing, and the expiration date thereof may later be waived by parol or by the conduct of the parties thereto. Furthermore, the contract as actually executed is ambiguous and contradictory as to when the right of the party of the second part to buy the land or produce a purchaser therefor should expire. And assuming, without deciding the question, that the parties intended at the time of the execution of the contract that it should expire on September 5, 1942, as contended by the appellees, nevertheless, the continued efforts of the agent after that date to sell the land under the authority previously conferred by the contract, under such circumstances as to apprise the owners of the fact that the agent still regarded the contract as remaining in force and showing their acquiescence and approval of such construction, we think constituted a sufficient consideration to support a verbal authority,

either express or implied, from the owners for the agent to continue his services.

From an examination of the former decisions of this Court as to when a real estate agent is entitled to recover a commission on a sale, we think that the following rules may be deduced:

1. Where the contract between the owner of the property and the agent specifies the price and terms of sale, the agent performs his duty, and is entitled to his commission, when he procures a purchaser ready, willing and able to buy, even though the owner may then decline to sell.

2. Where property is placed in the hands of a real-estate agent for sale at a certain price, and on specified terms, and a sale is brought about through the efforts of the agent as the procuring cause, he is entitled to his commissions on the sale, even though the final negotiations were conducted through the owner, who, in order to make the sale, accepts a price less than that stipulated to the agent, or when he sells at the price at which the agent was authorized to make the sale.

3. Where the contract expressly makes the payment of a commission depend on the obtaining of a certain price for the property, and the making of the sale on specified terms, the agent cannot recover, even though the owner sells at a less price, or on less favorable terms, to a person whom the agent produced as a prospective purchaser, unless the agent is prevented from making the sale by the fault of the owner—an exception to the two general rules above stated.

4. Where the price and terms are not specified in the contract between the owner and the agent, and the actual sale is made by the owner, still the agent has performed his duty, and is entitled to his commission, when he procures a purchaser to whom the principal sells.

The foregoing principles are in substance announced in the following decisions: Kolb v. Bennett Land Company, 74 Miss. 567, 21 So. 233; Johnson v. Sutton, 94 Miss.

544, 49 So. 970; Cook v. Smith, 119 Miss. 375, 80 So. 777; Swain v. Pitts, 120 Miss. 578, 82 So. 305; Moore v. Rich, 124 Miss. 283, 86 So. 772; Jenny v. Smith-Powell Realty Co., 125 Miss. 608, 88 So. 171; Roell v. Offutt, 138 Miss. 599, 103 So. 239; Skermetti v. Devitt, 145 Miss. 815, 111 So. 302; Hays v. Goodman-Leonard Company, 146 Miss. 766, 111 So. 869; Tupelo Hotel Company v. Long, 156 Miss. 337, 126 So. 6; Reynolds v. Alexander, 164 Miss. 860, 146 So. 305; and Case v. Harrison, 192 Miss. 531, 6 So. 2d 582.

We are of the opinion that under the applicable principles above stated, the motion made by the defendants to exclude the testimony offered by the complainant should have been overruled.

The remaining question to be decided is whether or not, under Section 1312, Code 1942, the appellant is entitled to a final judgment here in his favor for the commissions sued for. That section of the Code reads as follows:

"In the trial of causes in the chancery courts of the state of Mississippi, the defendant shall have the right and be entitled to introduce his evidence, notwithstanding the fact that he may have made a motion to exclude the evidence of the complainant, and that such motion was by the court overruled."

This statute first appeared as Chapter 265, Laws 1938. Prior to that time the rule had been declared to be that "There is no such practice in chancery as excluding by general motion or any other motion, all of the evidence for the complainant when the complainant has introduced his evidence, and thereupon rendering a decree for the defendant, because of the insufficiency of the evidence. Such a motion or any procedure equivalent thereof does not appertain to chancery practice, and is allowed in chancery only on condition that the defendant also be considered as having closed his proof, and if the motion is overruled that the complainant shall thereupon be entitled to a final decree." Griffith's Chancery Practice,

sec. 584, p. 651; Pearce v. Tharpe, 118 Miss. 107, 79 So. 69; Carter v. Studdard, 118 Miss. 345, 79 So. 225; Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653; and Hays v. Federal Land Bank, 163 Miss. 8, 140 So. 517.

While the foregoing statute, by its very language, only provides the right to the defendant to introduce his evidence when his motion to exclude that offered by the complainant has been overruled, we are of the opinion that it was the intention of the legislature to make the same rule applicable in chancery as obtains in the circuit court, when a motion is made to exclude the evidence of the plaintiff, and to direct a verdict for the defendant. It is well established that in such case, if the motion is overruled in the circuit court, then the defendant may proceed with the introduction of his evidence. On the other hand, where such a motion in said court is erroneously sustained, and the plaintiff appeals, we would not render final judgment here, on the theory that under the proof made by the plaintiff he was entitled to recover, but would reverse the case for a new trial. Applying this rule in chancery, it follows that the instant case should likewise be reversed and remanded for a new trial.

Since this is now being announced as the applicable rule in chancery, it should be further stated herein that the same considerations should control the action of the chancellor in sustaining such a motion as now pertains to the action of the circuit judge in that regard—that is to say, that all of the facts which the complainant's evidence fairly tends to establish, together with all the reasonable inferences to be deduced therefrom, should be assumed to be true when the chancellor rules on such a motion.

From the foregoing views based on our understanding of the case made on the merits, and the construction that we have thus given the statute hereinbefore quoted, it follows that the decree of the trial court should be reversed and the cause remanded for a new trial.

The suit having been filed prior to the execution and delivery of the deed, and at a time when the larger por-

tion of the consideration had not been paid, a lis pendens notice was given against the land and the appellee J. V. May was joined as a defendant. The question of whether the complainant would be entitled to a lien on the land under the facts disclosed, or to bind the unpaid purchase price in the hands of the said J. V. May, has not been discussed in the briefs, and we pretermit the expression of any opinion in regard thereto at this time.

Reversed and remanded.